ATTORNEY GENERAL v MERCK SHARP & DOHME CORPORATION

Docket No. 292003. Submitted November 4, 2010, at Lansing. Decided March 17, 2011, at 9:00 a.m. Leave to appeal denied, 490 Mich 878.

The Attorney General, on behalf of the state of Michigan and the Department of Community Health, brought an action in the Ingham Circuit Court against Merck Sharp & Dohme Corporation, the manufacturer of the prescription pain reliever Vioxx, alleging violation of the Medicaid False Claim Act (MFCA), MCL 400.601 *et seq.*, as a result of Merck's false and deceptive statements about the safety and efficacy of Vioxx. Plaintiffs claimed that if Merck had been truthful about the safety and efficacy of Vioxx, plaintiffs would not have paid all or part of the cost of Vioxx that was prescribed to Michigan Medicaid beneficiaries, and plaintiffs sought to recover those costs under the MFCA. Plaintiffs also sought recovery under a theory of unjust enrichment. Merck sought summary disposition, arguing that plaintiffs' claims constituted a products-liability action pursuant to MCL 600.2945(h) of the Revised Judicature Act (RJA) and were barred by MCL 600.2946(5), which provides that a manufacturer or seller of a drug is not liable in a products-liability action if the drug was approved for safety and efficacy by the federal Food and Drug Administration (FDA) and labeled in compliance with FDA standards at the time the drug left the control of the manufacturer or seller. The court, James R. Giddings, J., denied the motion, holding that plaintiffs' claims did not constitute a products-liability action because their claims did not require proof of a defective or unsafe product. The Court of Appeals granted Merck's application for leave to appeal.

The Court of Appeals *held*:

1. When, as here, the drug in question was approved by the FDA, the state's suit to recover Medicaid money premised on fraud by the drug company in its representations regarding the safety and efficacy of the drug is barred by MCL 600.2946(5), which exempts drug companies from liability in products-liability suits regarding FDA-approved drugs.

2. MCL 600.2945, which defines products-liability action and production, plainly provides that a plaintiff's claim is a products-

liability action subject to the immunity provision of MCL 600.2946(5) if (1) the action is based on a legal or equitable theory of liability, (2) the action is brought for the death of a person or for an injury to a person or damage to property, and (3) that loss was caused by or resulted from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of a drug product. Elements (1) and (3) were clearly met in this action. The phrase "damage to property" is broad enough to include both physical damage to an object and injury or harm to rights or interests associated with an object, as long as the damage was caused by or results from the production of a product. Plaintiffs sought money damages for Medicaid overpayments. Money itself is a form of property. Element (2) was met because plaintiffs' claim of monetary loss based on alleged misrepresentations regarding the safety and efficacy of Vioxx constituted a claim for damage to property. Plaintiffs' allegations fell within the statutory definition of a products-liability action.

3. MCL 600.2946(5) does not limit its application to claims brought by consumers or preclude claims pursued under the MFCA or described as an action for unjust enrichment.

4. The safety and efficacy of Vioxx was central to plaintiffs' claims. Because the substance of plaintiffs' claims concerned the safety and efficacy of Vioxx and Merck's representations in that regard, and because the FDA approved the safety and efficacy of Vioxx, plaintiffs' claims were barred by MCL 600.2946(5). The trial court erred by denying Merck's motion for summary disposition.

Reversed and remanded.

FITZGERALD, J., dissenting, stated that the trial court properly determined that plaintiffs' claim under the MFCA was not a products-liability action subject to the absolute defense established by MCL 600.2946(5). When examined in the proper context of a products-liability statute, it is clear that the phrase "damage to property" in MCL 600.2945(h) means physical damage to property caused by a defective or unreasonably dangerous product. In the context of the RJA, losses based on personal injury or physical damage to property are the only actionable losses addressed under the rubric of products liability. The definition of products-liability action must be considered in the context of a suit by purchasers, users, or bystanders who suffer losses resulting from defects in a product. The damages in this case did not derive from injuries to a purchaser, user, or bystander. This case was not

a products-liability action, as defined in MCL 600.2945(h), because a suit brought for the return of Medicaid overpayments is not brought for damage to property. The trial court properly denied defendant's motion for summary disposition.

1. PRODUCTS LIABILITY — PHARMACEUTICALS — FOOD AND DRUG ADMINISTRATION APPROVAL.

An action is a products-liability action for purposes of the statute that provides immunity for products-liability claims against a manufacturer or seller of a drug that was approved for safety and efficacy by the Food and Drug Administration and labeled in compliance with Food and Drug Administration standards if (1) the action is based on a legal or equitable theory of liability, (2) the action is brought for the death of a person or for injury to a person or damage to property, and (3) that loss was caused by or resulted from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, marketing, selling, advertising, packaging, or labeling of a drug product (MCL 600.2945[h] and [i], 600.2946[5]).

2. PRODUCTS LIABILITY — MONETARY LOSSES — WORDS AND PHRASES — DAMAGE TO PROPERTY.

The phrase "damage to property" in the statute defining a products-liability action is broad enough to include both physical damage to an object and injury or harm to rights or interests associated with an object, as long as the damage was caused by or results from the production of the product; money itself is a form of property; a claim of monetary loss based on alleged misrepresentations regarding the safety and efficacy of a drug constitutes a claim for damage to property for purposes of the statute that provides immunity for products-liability claims against a manufacturer or seller of a drug that was approved for safety and efficacy by the Food and Drug Administration and labeled in compliance with Food and Drug Administration standards (MCL 600.2945[h], 600.2946[5]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, and *Mark Matus*, Assistant Attorney General, for plaintiffs.

*Honigman Miller Schwartz and Cohn LLP* (by *Andrew S. Doctoroff*), *Skadden, Arps, Slate, Meagher & Flom LLP* (by *John H. Beisner*), and *O'Melveny &*

*Myers LLP* (by *Brian C. Anderson, Matthew M. Shors,* and *Rebecca S. Bjork*) for defendant.

Before: SAWYER, P.J., and FITZGERALD and SAAD, JJ.

SAAD, J. Defendant, Merck Sharp & Dohme Corporation, appeals by leave granted the trial court's order that denied its motion for summary disposition. For the reasons set forth below, we reverse and remand for further proceedings.

I. NATURE OF THE CASE

Michigan's Attorney General claims that because Merck misrepresented the safety and efficacy of its prescription pain reliever Vioxx in its marketing and because Michigan reimbursed providers who prescribed or dispensed Vioxx, Michigan would not have incurred such expenses but for Merck's fraudulent activity. The state now claims a right to recover these sums under the Medicaid False Claim Act (MFCA), MCL 400.601 *et seq.*, but Merck counters that Michigan's Legislature immunized it from liability in suits that seek to adjudicate a drug's safety when the federal Food and Drug Administration (FDA) has approved the drug. The Attorney General maintains that the statute only exempts drugmakers in traditional products-liability actions in which an end user of the drug, i.e., a consumer, is injured by the ingestion of the drug. Merck argues that, regardless of the label that the Attorney General gives this lawsuit, the claims and ultimate right to recovery center on the safety and efficacy of a drug that the FDA has approved and the immunity statute, therefore, bars the claims.

Michigan's immunity statute is the only one of its kind in the United States, and the claims made by the parties raise an issue of first impression under Michi-

gan law. We hold that when, as here, the drug in question was approved by the FDA, the state's suit to recover Medicaid money premised on fraud by the drug company in its representations regarding the safety and efficacy of the drug is barred by MCL 600.2946(5), which exempts drug companies from products-liability suits regarding FDA-approved drugs.[1]

## II. FACTS AND PROCEEDINGS

Merck is the manufacturer of the prescription pain reliever Vioxx. In May 1999, the FDA approved Vioxx for the treatment of osteoarthritis, the management of acute pain in adults, and the treatment of primary dysmenorrhea. Subsequent clinical trials and independent studies showed an increased risk of heart attack in persons who used Vioxx. In 2004, Merck voluntarily removed Vioxx from the market.[2]

On August 21, 2008, the Michigan Attorney General filed this action under the MFCA and alleged that Merck made false and deceptive statements about the safety and efficacy of Vioxx. Plaintiffs relied on § 7 of the MFCA, which provides, in pertinent part:

> (1) A person shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, upon or against the state, knowing the claim to be false.

---

[1] To assert a claim under the MFCA against a pharmaceutical company that has undertaken the rigorous and required process to obtain FDA approval for a prescription drug appears to be an interpretation of the act not intended by the Legislature, but in light of our ruling that the Attorney General's suit is barred by MCL 600.2946(5), we need not address this issue of first impression under Michigan law.

[2] A plethora of lawsuits followed the removal of Vioxx from the market, resulting in billions of dollars in settlements and jury awards under various legal theories.

(2) A person shall not make or present or cause to be made or presented a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, that he or she knows falsely represents that the goods or services for which the claim is made were medically necessary in accordance with professionally accepted standards. [MCL 400.607(1) and (2).]

Vioxx had been prescribed to Medicaid beneficiaries from 1999 until 2004, when it was taken off the market. Plaintiffs alleged that, as early as 2000, Merck knew that Vioxx was associated with an increased risk of heart attack and Merck concealed or misrepresented the scientific data from clinical trials that demonstrated this risk. Plaintiffs asserted that if Merck had been truthful about the safety and efficacy of Vioxx, they would not have paid all or part of the cost of Vioxx prescribed to Michigan Medicaid beneficiaries, which cost them more than $20 million. Plaintiffs also sought recovery under a theory of unjust enrichment.

Merck moved for summary disposition pursuant to MCR 2.116(C)(8) and argued that plaintiffs' claims constitute a "product liability action" pursuant to MCL 600.2945(h)[3] and are therefore barred by MCL 600.2946(5),[4] which provides that a manufacturer or seller of a drug is not liable in a "product liability

---

[3] MCL 600.2945(h) states: " 'Product liability action' means an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product."

[4] MCL 600.2946(5) states, in pertinent part:

In a product liability action against a manufacturer or seller, a product that is a drug is not defective or unreasonably dangerous, and the manufacturer or seller is not liable, if the drug was approved for safety and efficacy by the United States food and drug administration, and the drug and its labeling were in compliance with the United States food and drug administration's approval at the time the drug left the control of the manufacturer or seller.

action" if the drug was approved for safety and efficacy by the FDA and labeled in compliance with FDA standards. Merck relied on *Duronio v Merck & Co, Inc*, unpublished opinion per curiam of the Court of Appeals, issued June 13, 2006 (Docket No. 267003), in which this Court affirmed a trial court's grant of summary disposition in favor of Merck in a similar case. In *Duronio*, the plaintiff asserted a fraud claim and a violation of the Michigan Consumer Protection Act (MCPA), MCL 445.901 *et seq.*, on the basis of allegations that Merck misrepresented or concealed the risks associated with Vioxx.

Here, the trial court denied Merck's motion for summary disposition. The court disagreed in part with the *Duronio* panel's interpretation of the phrase "products-liability action." The court ruled that plaintiffs' claims do not constitute a products-liability action because, unlike a products-liability action, plaintiffs' claims under the MFCA and their theory of unjust enrichment do not require proof of a defective or unsafe product. The court also examined the legislative intent underlying MCL 600.2946(5) and concluded that the Legislature did not intend to foreclose actions under the MFCA.

### III. ANALYSIS

Merck argues that this is a products-liability lawsuit, which is barred under MCL 600.2946(5). Merck maintains that the trial court erred by construing "product liability action" by considering legislative intent and public policy concerns instead of the plain language of MCL 600.2945(h) and this Court's interpretation of it in *Duronio*. Merck argues that the statute defines "product liability action" broadly enough to encompass plaintiffs' claims. Merck also contends that even if

public-policy implications are relevant, the trial court erred in its analysis. MCL 600.2946(5) does not bar all claims against pharmaceutical manufacturers in the hypothetical situations posed by the court. Claims involving ineffective drugs, or the ineffective performance of drugs, would be permitted as long as the safety of the drugs was not implicated. Merck also argues that allowing plaintiffs' claims to proceed would subvert the legislative intent by leaving pharmaceutical manufacturers exposed to high-stakes litigation, while shielding them from smaller claims brought by individuals such as the *Duronio* plaintiff. Merck contends that the trial court improperly focused on the labels of plaintiffs' claims, rather than their substance.

Plaintiffs distinguish their case from a products-liability action, which they describe as a specialized branch of tort law involving the sale of defective products to individual consumers or end users. Plaintiffs argue that their case differs because they seek reimbursement for money paid by a third party that never bought or used the product. Plaintiffs maintain that the immunity granted by statute does not expand the traditional scope of products-liability litigation beyond consumers who sue manufacturers. Plaintiffs also argue that *Duronio* is not controlling and that the Court should focus on the different purposes of the MFCA and the products-liability statute.

This Court reviews a trial court's grant of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim on the basis of the pleadings alone. *Id.* at 119-120. The motion is properly granted if the claim is so unenforceable as a matter of law that no factual development could possibly justify recovery. *Id.* at 119. This Court also reviews

de novo as a question of law the interpretation and application of a statute. *Health Care Ass'n Workers Compensation Fund v Dir of the Bureau of Worker's Compensation*, 265 Mich App 236, 243; 694 NW2d 761 (2005).

In 1995, the Legislature amended MCL 600.2946 to provide immunity for products-liability claims against a manufacturer or seller of a drug that was approved for safety and efficacy by the FDA and labeled in compliance with FDA standards.[5] MCL 600.2946(5); *Taylor v Gate Pharm*, 468 Mich 1, 6-7; 658 NW2d 127 (2003). MCL 600.2946(5) states, in pertinent part:

> In a product liability action against a manufacturer or seller, a product that is a drug is not defective or unreasonably dangerous, and the manufacturer or seller is not liable, if the drug was approved for safety and efficacy by the United States food and drug administration, and the drug and its labeling were in compliance with the United States food and drug administration's approval at the time the drug left the control of the manufacturer or seller.

In interpreting this provision, our Supreme Court in *Taylor* stated that "the Legislature has determined that a drug manufacturer or seller that has *properly obtained FDA approval* of a drug product *has acted sufficiently prudently so that no tort liability may lie."* *Taylor*, 468 Mich at 7 (emphasis added).

The central issue is whether plaintiffs' claims constitute a "product liability action" within the meaning of MCL 600.2946(5). Plaintiffs assert that it is not, but a court is not bound by a party's choice of labels. *Johnston v City of Livonia*, 177 Mich App 200, 208; 441 NW2d 41 (1989). Rather, we determine the gravamen of

---

[5] There is no dispute that the FDA approved Vioxx and its labeling before the drugs left Merck's control.

a party's claim by reviewing the entire claim, and a party cannot avoid dismissal of a cause of action by artful pleading. *Maiden*, 461 Mich at 135. MCL 600.2945 defines "product liability action" and "production" as follows:

> (h) "Product liability action" means an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product.
>
> (i) "Production" means manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling. [MCL 600.2945(h) and (i).]

As this Court explained in *McElhaney v Harper-Hutzel Hosp*, 269 Mich App 488, 493; 711 NW2d 795 (2006),

> [t]he primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. The first step is to examine the plain language of the statute itself. The Legislature is presumed to have intended the meaning it plainly expressed. If the statutory language is clear and unambiguous, appellate courts presume that the Legislature intended the meaning plainly expressed, and further judicial construction is not permitted. [Citations omitted.]

Pursuant to the plain language of the statute, the claims asserted by the Attorney General constitute a "product liability action" subject to the immunity provision of MCL 600.2946(5) if (1) the action is based on a legal or equitable theory of liability, (2) the action is brought for the death of a person or for an injury to a person or damage to property, and (3) that loss was caused by or resulted from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing,

listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of a product.

Here, it is clear that elements (1) and (3) are met. Plaintiffs' action is clearly based on a legal or equitable theory of liability. Plaintiffs allege that Merck is liable for violating MCL 400.607 of the MFCA and under the equitable principle of unjust enrichment. Further, plaintiffs allege that their loss was caused by the marketing and advertising of Vioxx. Plaintiffs claim that Merck made deceptive statements about the *safety and efficacy* of Vioxx and that they would not have paid all or part of the cost of Vioxx prescribed to Michigan Medicaid beneficiaries had Merck not made the allegedly false and deceptive statements. Moreover, plaintiffs specifically allege that these deceptive statements came in the form of marketing and advertising.

With regard to the second element, the question is whether plaintiffs' claims were brought for the death of a person or for injury to a person or damage to property. Plaintiffs have made no allegation of a death or physical injury to a person, but seek money damages for alleged "Medicaid overpayments wrongfully received by Defendant." There is no published authority interpreting MCL 600.2946(5) in this context. However, generally, " '[a] person whose property is diminished by a payment of money wrongfully induced is injured in his property.' " *Reiter v Sonotone Corp*, 442 US 330, 340; 99 S Ct 2326; 60 L Ed 2d 931 (1979), quoting *Chattanooga Foundry & Pipe Works v City of Atlanta*, 203 US 390, 396; 27 S Ct 65; 51 L Ed 241 (1906) (city induced to pay more than the value of the item received). We also find persuasive the analysis in the unpublished opinion in *Duronio*.[6] In *Duronio*, the plaintiff sought money dam-

---

[6] Unpublished cases are not binding on this Court, MCR 7.215(C)(1), but we may view them as persuasive when there is limited caselaw on the

ages for the purchase price of Vioxx and costs related to
expenses for a medical consultation recommended by
the FDA and Merck in connection with Merck's volun-
tary withdrawal of Vioxx from the market. *Duronio*,
unpub op at 1-2. The plaintiff alleged fraud and viola-
tion of the MCPA, claiming "that Merck disseminated
information to the general public that concealed or
downplayed potential cardiovascular risks and falsely
implied that Vioxx provided superior pain relief to
over-the-counter medications, and that Merck's phar-
maceutical representatives misled prescribing physi-
cians regarding the safety of Vioxx for their patients."
*Id.* at 1.

The trial court granted Merck's motion for summary
disposition in *Duronio* and ruled that, in substance, the
plaintiff's claim was a products-liability claim, as de-
fined in MCL 600.2945(h), and therefore Merck was
immune from suit under MCL 600.2946(5). *Duronio*,
unpub op at 2. This Court affirmed and agreed that the
plaintiff's claim was a products-liability action within
the meaning and scope of MCL 600.2945(h). The panel
specifically ruled that the plaintiff's claim for money
damages was based on a theory of liability "for 'damage
to property' caused by or resulting from the produc-
tion" of Vioxx:

> Because plaintiff did not allege any injury to his person,
> the trial court could only find a legal or equitable theory
> falling within the scope of MCL 600.2945(h) if plaintiff's
> action could be characterized as one for "damage to property"
> caused by or resulting from the production of Vioxx. . . .
>
> * * *
>
> MCL 600.2945(h) does not use the word "damages," but
> rather requires an "action based on a legal or equitable

issue, *Dyball v Lennox*, 260 Mich App 698, 705 n 1; 680 NW2d 522 (2004).

theory of liability brought for the death of a person or for injury to a person *or damage to property* caused by or resulting from the production of a product." Examined in context, we reject plaintiff's claim that "damage to property" only encompasses physical damage to property. The phrase is broad enough to include both physical damage to an object and injury or harm to rights or interests associated with an object, so long as the damage is caused by or results from the production of the product. . . .

The fact that the alleged injury in this case is in the form of monetary loss does not preclude application of MCL 600.2945(h). Money itself is a form of property, *Garr[a]s v Bekiares*, 315 Mich 141, 148-149; 23 NW2d 239 (1946), and a consumer's expenditure of money for overvalued goods can constitute an injury to property. [*Duronio*, unpub op at 4-5.]

In addition to holding that the plaintiff's claim for reimbursement was a claim for damage to property, the *Duronio* panel looked beyond the plaintiff's "fraud" label for his claim and ruled that "the safety and efficacy of Vioxx [was] essential to his monetary loss claim." *Id.* at 6. Therefore, the plaintiff's claim was barred under MCL 600.2946(5):

[P]laintiff presented the claim as arising from misrepresentations and omissions, and denied that the alleged concealed risks of using Vioxx ever materialized for him, but it is clear that the safety and efficacy of Vioxx is essential to his monetary loss claim.

Because plaintiff brought the claim for damage to property (money) caused by or resulting from the production (marketing, selling, advertising, packaging, or labeling) of Vioxx, plaintiff's pleaded common-law fraud claim for a refund of the cost of purchasing Vioxx is, in substance, a product liability action within the meaning of MCL 600.2945(h). Assuming for purposes of our review that plaintiff's request to have Merck pay for a medical consultation is actionable in tort, plaintiff's alleged loss of a right or interest in money to obtain a medical consultation constitutes damage to property within the

meaning of MCL 600.2945(h). Any additional claim for lost income or expenses to obtain the medical consultation is merely a pecuniary loss flowing from that injury. *Citizens for Pretrial Justice v Goldfarb*, 415 Mich 255, 268; 327 NW2d 910 (1982).

The trial court properly determined that plaintiff's common-law fraud claim is, in substance, a product liability action subject to the absolute defense established by MCL 600.2946(5). [*Duronio*, unpub op at 6.][7]

We hold that plaintiffs' allegations fall within the statutory definition of "product liability action" because plaintiffs have asserted legal and equitable theories of liability for damage to property resulting from the production of a product. MCL 600.2945(h). Pursuant to the ordinary meaning of the phrase as examined by this Court in *Duronio*, plaintiffs' claim of monetary loss based on alleged misrepresentations regarding the safety and efficacy of Vioxx constitutes a claim for "damage to property."

We agree with Merck that nothing in the statute limits its application to claims brought by consumers and that the statute in no way precludes a claim pursued under the MFCA or described as an action for unjust enrichment. Again, by its own terms, MCL 600.2946(5) applies to actions "based on a legal or equitable theory of liability," which includes the claims at issue here. If the plain language of the statute results in an outcome that the Legislature now deems improper, it is for the Legislature, not this Court, to narrow the application of the statute by amending or redrafting its terms.

---

[7] The Court in *Duronio* did not decide whether the plaintiff's MCPA claim was also a products-liability action and therefore also barred by the immunity provision in MCL 600.2946(5). *Duronio*, unpub op at 7. Rather, this Court ruled that the trial court correctly dismissed the plaintiff's MCPA claim because an exemption within the MCPA statute applied, MCL 445.904(1)(a). *Id.*

Like the plaintiff's allegations in *Duronio*, plaintiffs' claims here are indisputably based on Merck's representations about the safety and efficacy of Vioxx. Although a claim under the MFCA does not require proof of an unsafe product, in this case the safety and efficacy of Vioxx is central to plaintiffs' claims, as plaintiffs' counsel acknowledged at oral argument. Viewing the complaint in its entirety, the substance of plaintiffs' claims concerns the safety and efficacy of Merck's drug and Merck's representations in that regard. Because the FDA approved the safety and efficacy of Vioxx, plaintiffs' claims are barred by MCL 600.2946(5).

For these reasons, we hold that the trial court erred when it failed to apply the plain language of MCL 600.2945(h) and MCL 600.2946(5). Further, because plaintiffs' lawsuit constitutes a "product liability action" under the controlling statutory language, Merck is not liable under the terms of the statute and the trial court erred by denying Merck's motion for summary disposition.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

SAWYER, P.J., concurred with SAAD, J.

FITZGERALD, J. (*dissenting*). I respectfully dissent. In my view, the trial court properly determined that plaintiffs' claim under the Medicaid False Claim Act (MFCA), MCL 400.601 *et seq.*, as pleaded, is not a products-liability action subject to the absolute defense established by MCL 600.2946(5). Consequently, the trial court properly declined to grant summary disposition in favor of defendant, Merck Sharpe & Dohme Corporation.

Defendant's motion for summary disposition was brought pursuant to MCR 2.116(C)(8). A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint and is limited to the pleadings alone. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). A motion under MCR 2.116(C)(8) may be granted only when the claims alleged are " 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.' " *Id.* at 119 (citation omitted). When deciding a motion brought under this subrule, a court considers only the pleadings. MCR 2.116(G)(5); *Maiden*, 461 Mich at 119-120.

Defendant is the manufacturer of the prescription pain reliever Vioxx, which was approved by the Food and Drug Administration (FDA) in May 1999 for the treatment of osteoarthritis, the management of acute pain in adults, and the treatment of primary dysmenorrhea. Subsequent clinical trials and independent studies conducted *after* Vioxx was approved by the FDA showed that patients using Vioxx had four or five times as many heart attacks as patients using the over-the-counter pain reliever Aleve. In 2004, defendant voluntarily removed Vioxx from the market.

On August 21, 2008, plaintiffs brought this action under the MFCA.[1] The gist of plaintiffs' complaint is

---

[1] Plaintiffs relied on § 7 of the MFCA, which provides, in pertinent part:

(1) A person shall not make or present or cause to be made or presented to an employee or officer of this state a claim under the social welfare act, 1939 PA 280, MCL 400.1 to 400.119b, upon or against the state, knowing the claim to be false.

(2) A person shall not make or present or cause to be made or presented a claim under the social welfare act, 1939 PA 280, MCL

that defendant fraudulently induced the state of Michigan to cover Vioxx under Medicaid by failing to adequately disclose its risks.[2] Plaintiffs alleged that defendant learned through clinical trials as early as 2000 that Vioxx posed a risk of heart attacks and other adverse cardiovascular events and that defendant did not disclose this knowledge to the public. They also alleged that defendant used a marketing campaign to maximize the sale of Vioxx and, in the course of doing so, attempted to minimize the safety risks of Vioxx and overstate its efficacy. Plaintiffs averred that if defendant had been truthful about the safety and efficacy of Vioxx, the state would not have paid all or part of the $20 million cost of Vioxx prescribed to Michigan Medicaid beneficiaries.

Defendant moved for summary disposition and asserted that plaintiffs' MFCA claim was, in truth, a products-liability claim that attempted to avoid the absolute defense of MCL 600.2946(5).[3] MCL 600.2946(5) immunizes manufacturers and sellers of an FDA-approved drug from liability in a products-liability action if the drug complied with FDA standards and labeling when it left the manufacturer's or seller's

---

400.1 to 400.119b, that he or she knows falsely represents that the goods or services for which the claim is made were medically necessary in accordance with professionally accepted standards. [MCL 400.607(1) and (2).]

[2] Plaintiffs' complaint also included a claim of unjust enrichment.

[3] Defendant relied on *Duronio v Merck & Co, Inc*, unpublished opinion per curiam of the Court of Appeals, issued June 13, 2006 (Docket No. 267003), in which a panel of this Court affirmed a trial court's grant of summary disposition in favor of defendant in a similar case. In *Duronio*, the plaintiff asserted a fraud claim and a violation of the Michigan Consumer Protection Act, MCL 445.901 *et seq.*, on the basis of allegations that the defendant misrepresented or concealed the risks associated with Vioxx.

control.[4] *Taylor v Gate Pharm*, 468 Mich 1, 6-7; 658 NW2d 127 (2003). The trial court denied the motion. The court concluded that plaintiffs' claim did not constitute a products-liability action because it did not require proof of a defective or unsafe product. The trial court also concluded that the Legislature did not intend for MCL 600.2946(5) to foreclose actions under the MFCA.

Defendant argues on appeal that, despite plaintiffs' labeling of its cause of action as a claim under the MFCA, plaintiffs' claim is a products-liability action as defined in MCL 600.2945(h) and used in MCL 600.2946(5).[5]

MCL 600.2946(5) states, in pertinent part:

> In a product liability action against a manufacturer or seller, a product that is a drug is not defective or unreasonably dangerous, and the manufacturer or seller is not liable, if the drug was approved for safety and efficacy by the United States food and drug administration, and the drug and its labeling were in compliance with the United States food and drug administration's approval at the time the drug left the control of the manufacturer or seller.

In interpreting this provision, our Supreme Court has stated, "[T]he Legislature has determined that a drug manufacturer or seller that has properly obtained FDA approval of a drug product has acted sufficiently prudently so that no tort liability may lie." *Taylor*, 468 Mich at 7. In other words, a drug that has obtained FDA

---

[4] An exception to the absolute defense exists in situations involving fraud or bribery in dealings with the FDA. See MCL 600.2946(5)(a) and (b).

[5] Notably, defendant has not asked this court to resolve the question whether defendant's actions concerning its introduction and continued sale of Vioxx could be deemed sufficient to state a cause of action for a violation of the MFCA.

approval is "not defective or unreasonably dangerous" for purposes of a products-liability action.

MCL 600.2945 defines "product liability action" and "production" as follows:

> (h) "Product liability action" means an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product.

> (i) "Production" means manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling.

Thus, plaintiffs' claim is a "product liability action" subject to the absolute defense of MCL 600.2946(5) if (1) the action is based on a legal or equitable theory of liability, (2) the action is brought for the death of a person or for an injury to a person or damage to property, and (3) that loss was caused by or resulted from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling of a product.

The point of contention is whether plaintiffs' claim was "brought for the death of a person or for injury to a person or damage to property . . . ." Plaintiffs are seeking money damages "representing Medicaid overpayments wrongfully received by Defendant" as a result of defendant's allegedly fraudulent conduct that occurred *after* the FDA's approval of Vioxx. To treat this case as a products-liability action would require a finding that plaintiffs' claim for money wrongfully paid was brought for *damage to property*.

In order to determine whether plaintiffs' claim was brought for "damage to property" pursuant to MCL 600.2945(h), this Court must interpret this phrase. "The fair and natural import of the provision governs, *considering the subject matter of the entire statute.*" *People v McGraw*, 484 Mich 120, 124; 771 NW2d 655 (2009) (emphasis added). When examined in the proper context of a products-liability statute, it is clear that "damage to property" means *physical* damage to property caused by a defective or unreasonably dangerous product.

"Products liability is the name currently given to the area of the law involving the *liability* of those who supply goods or products for the use of others to *purchasers, users, and bystanders* for losses of various kinds *resulting from so-called defects in those products.*" Prosser & Keeton, Torts (5th ed), § 95, p 677 (emphasis added). Indeed, the language in MCL 600.2946(5) refers to a products-liability action and defines when a drug is not "defective or unreasonably dangerous" for purposes of that action. Products liability includes multiple theories of recovery and types of losses. Prosser & Keeton, p 678, lists five different categories of losses:

> (1) personal injuries, (2) physical harm to tangible things, other than the assembled product such as an automobile, a helicopter, or an industrial machine of some kind, (3) physical harm to or destruction of the assembled product purchased by the first purchaser for use, (4) physical harm to or destruction of a product that was constructed with or repaired with the use of the target seller's component part, and (5) direct economic loss resulting from the purchase of the inferior product, and indirect consequential loss, such as loss of profits, resulting from the unfitness of the product adequately to serve the purchaser's purposes, such as when a plastic pipe pur-

chased for an irrigation system on a golf course is unsatisfactory and requires replacement.

The first four types of losses are based on personal injuries or physical damage to property. The fifth type is based on purely economic loss. Under Michigan jurisprudence, disputes involving economic loss relating to a transaction in goods are generally subject to article 2 of the Uniform Commercial Code, MCL 440.1101 *et seq.*, rather than the Revised Judicature act (RJA). See *Neibarger v Universal Cooperatives, Inc*, 439 Mich 512; 486 NW2d 612 (1992). The Court in *Neibarger* explained the rationale:

> The economic loss doctrine, simply stated, provides that " '[w]here a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.' " This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by resort to the law of torts. [*Id.* at 520-521 (citations omitted).]

Thus, in the context of the RJA, losses based on personal injury or physical damage to property are the only actionable losses addressed under the rubric of products liability. Again, this is consistent with damages for harm caused by a defective or unsafe product.

If damage to property is given a broad interpretation, like that in *Duronio*, the statute would provide a manufacturer or seller of drugs immunity to claims for losses that are different from the four types of losses listed above and not contemplated by the Legislature. The definition of products-liability action must be considered in the context of a suit by purchasers, users, or

bystanders who suffer losses resulting from defects in a product. Prosser & Keeton, p 677. The damages in this case do not derive from injuries to a purchaser, user, or bystander.[6] Our Supreme Court has explained that products liability "derive[d] either from a duty imposed by law or from policy considerations which allocate the risk of dangerous and unsafe products to the manufacturer and seller rather than the *consumer.*" *Neibarger*, 439 Mich at 523 (emphasis added). Here, every section of the statute is written in the context of a suit by a purchaser, user, or bystander. Indeed, the definitions of "misuse" and "sophisticated user" in the MFCA make it clear that the potential plaintiff in a products-liability action is the user of the product. See MCL 600.2945(e) and (j).

On the basis of the foregoing, "damage to property" is properly interpreted as *physical damage* to property resulting from a defective or unreasonably dangerous product. As such, the present case is not a products-liability action, as defined in MCL 600.2945(h), because a suit brought for the return of Medicaid overpayments is not "brought for . . . damage to property . . . ." Accordingly, I would conclude that the trial court properly denied defendant's motion for summary disposition.

---

[6] The damages arise from an injury to Michigan's Medicaid program and represent the amount of money allegedly wrongfully paid to defendant.