*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIAM HARRISON,

        Plaintiff-Appellee,

v

MELANIE HALAS in her capacity as CLERK OF
THE CITY OF ROYAL OAK,

        Defendant,

and

OAKLAND COUNTY BOARD OF
CANVASSERS,

        Defendant-Appellant.

UNPUBLISHED
February 18, 2025
12:39 PM

No. 370776
Oakland Circuit Court
LC No. 2023-204471-CZ

WILLIAM HARRISON,

        Plaintiff-Appellant,

v

MELANIE HALAS, in her capacity as CLERK OF
THE CITY OF ROYAL OAK, and OAKLAND
COUNTY BOARD OF CANVASSERS,

        Defendants-Appellees.

No. 370791
Oakland Circuit Court
LC No. 2023-204471-CZ

Before: YOUNG, P.J., and GARRETT and WALLACE, JJ.

PER CURIAM.

-1-

Following the Oakland County Board of Canvassers (OCBC) recount of the votes on a November 2023 ballot initiative in Royal Oak, plaintiff William Harrison (Hereinafter, "plaintiff") filed a lawsuit requesting additional recount services and investigation into the election, as well as a partial refund of the fees he paid for the recount to be conducted. The trial court agreed with plaintiff that he was entitled to a partial refund but otherwise granted summary disposition in favor of defendants OCBC and Melanie Halas, in her official capacity as Clerk of the City of Royal Oak. Plaintiff and OCBC both appeal in these two consolidated cases and we affirm.

## I. FACTS AND PROCEEDINGS

In the November 7, 2023 election, voters in the City of Royal Oak approved a ballot proposal, Proposal B, which would authorize a ranked-choice voting method for the city's mayor and council if, in the future, the Legislature allows municipalities to use a ranked-choice method. Plaintiff petitioned the OCBC for a recount of Proposal B's votes, stating allegations related to the accuracy of electronic vote tabulators, and discrepancies in lists of absentee and in-person voters. Plaintiff requested recounts for 16 precincts, including recounts of in-person election-day votes, absentee votes, and early votes. The OCBC required plaintiff to pay the $125 deposit required by MCL 168.867(6) for 48 precincts because it counted each precinct's absentee voting site and early voting site as additional, separate precincts. Plaintiff therefore paid $6,000.

The OCBC conducted the recount on December 15, 2023, and found that one vote was counted in error. Plaintiff filed a complaint against the OCBC and Halas for declaratory and injunctive relief, and sought writs of mandamus and superintending control. Plaintiff's allegations regarding ballot-counting irregularities, however, were vague and indirect; for example, he alleged that voting officials in Georgia determined that a tabulator miscounted votes in a 2021 election, but he did not explain how that incident was relevant to the 2023 Michigan election. Plaintiff stated that he was wrongly required to pay a recount fee for each precinct's absentee voter sites and early voting sites. He sought a refund.

Defendants moved for summary disposition under MCR 2.116(C)(8) (both defendants) and (C)(10) (OCBC only). They argued that plaintiff's claims were moot because he sought judicial intervention in a recount that was already completed. They also argued that plaintiff could not establish a claim for mandamus because defendants did not owe him a clear legal duty that was ministerial in nature. Defendants denied that the trial court had jurisdiction to issue an order of superintending control because the OCBC was not an inferior tribunal. The trial court granted defendants' summary disposition motions. However, it concluded that plaintiff was entitled to a partial refund because OCBC erred in counting the absentee voter sites and early voting sites as additional precincts. The trial court ordered OCBC to arrange the refund for plaintiff. OCBC moved for reconsideration of the refund order. The trial court granted in part and denied in part the motion, concluding that plaintiff should not have been charged for each early voting site, but denying plaintiff a refund for the absentee voter sites.

## II. DOCKET NO. 370776: RECOUNT FEES AND REFUNDS

OCBC, with support from amicus curiae Michigan Election Officials, argues that the trial court erred in granting plaintiff a $2,000 refund of the $6,000 he paid as a deposit for his petition

to recount votes from the early voting sites in 16 precincts.[1]  This issue concerns questions of constitutional and statutory interpretation and application, which we review de novo.  *Warren v Flint*, ___ Mich App ___, ___ ; ___ NW3d ___ (2024) (Docket No. 366226); slip op at 3.  "A trial court's decision on a motion for reconsideration is reviewed for an abuse of discretion."  *Tripp v Baker*, 346 Mich App 257, 274; 12 NW3d 45 (2023).  "A trial court abuses its discretion if it chooses an outcome outside the range of principled outcomes."  *Id*. (quotation marks and citation omitted).  "A court by definition abuses its discretion when it makes an error of law."  *In re Ingham Co Treasurer for Foreclosure*, 331 Mich App 74, 78; 951 NW2d 85 (2020) (quotation marks and citation omitted).

"When interpreting a constitutional provision, the primary goal is to determine the initial meaning of the provision to the ratifiers, the people, at the time of ratification."  *Bate v St Clair Shores*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 364536 and 364537); slip op at 2.  "To effectuate this intent, the court also applies the plain meaning of the terms used in the Constitution."  *Id*. at ___; slip op at 2.  Our Supreme Court recently summarized the principles of statutory construction:

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language.  The first step in that determination is to review the language of the statute itself.  Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used.  We may consult dictionary definitions to give words their common and ordinary meaning.  When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent.  [*Schafer v Kent Co*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket Nos. 164975 and 165219); slip op at 12 (quotation marks and citation omitted).]

"In reviewing the statute's language, every word should be given meaning, and we should avoid a construction that would render any part of the statute surplusage or nugatory."  *Holliday v Secretary of State*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 372241, 372255, and 372256); slip op at 7 (quotation marks and citation omitted).

---

[1] Plaintiff uses his brief in Docket No. 370791 to respond to OCBC's argument in Docket No. 370776 regarding payment of a deposit for recount of votes cast at early voting sites.  Plaintiff did not cross-appeal in Docket No. 370776 to challenge the trial court's order denying him a refund of the deposit paid for the recount for absentee voting sites.  His argument in his brief in Docket No. 370791 does not present a direct argument that the trial court erred in granting OCBC's motion for reconsideration regarding absentee votes.  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority."  *Movie Mania Metro, Inc v GZ DVD's Inc*, 306 Mich App 594, 605-606; 857 NW2d 677 (2014) (quotation marks and citation omitted).  We therefore consider this issue waived.

This issue entails interpretation of constitutional and statutory provisions governing early voting and petitions to recount election accounts. Early voting is a recent innovation in Michigan, established by the voters' approval of Constitutional Measure No. 22-2 at the November 8, 2022 election. This measure amended the state constitution to add provisions regarding elections, including provisions for early voting. Const 1963, Art II, § 4(m). Our Legislature enacted 2023 PA 81, which amends the Michigan Election Law, MCL 168.1, *et seq*., by including new provisions consistent with Measure 22-2. Although 2023 PA 81 became effective February 13, 2024, after the events related to this appeal, we believe that the amendments provide instructive guidance. Among other modifications, 2023 PA 81 adds sections MCL 168.720a to 168.720j, all related to early voting, to Michigan Election Law. It also amends MCL 168.662 to include requirements for early voting sites.[2]

Plaintiff sought a recount of votes on Proposal B under MCL 168.863[3], which grants to a registered elector the right to petition for a recount of votes on a local government ballot proposal if the elector believes that election officials have committed fraud or error in counting the votes. MCL 168.867[4] provides, in pertinent part:

> (1) A candidate or elector filing a recount petition under section 862 or 863 shall file the recount petition with the clerk of the appropriate board of county canvassers. Except as otherwise provided in this section, at the time of filing the recount petition, the petitioner shall deposit with the clerk the sum of $25.00 for each precinct referred to in his or her recount petition.
>
> * * *
>
> (6) If the vote is on a proposal and the official canvass of votes shows that the number of votes separating the "yes" votes and the "no" votes is more than 50 votes or 0.5% of the total number of votes cast on the proposal, whichever is greater, the petitioner shall deposit with the clerk the sum of $125.00 for each precinct referred to in his or her petition.
>
> (7) If, by reason of the recount, the petitioner establishes sufficient fraud or mistake as set forth in his or her recount petition to change the result of the election and receives a certificate of election or establishes sufficient fraud or mistake to change the result upon an amendment or proposition, the votes for and against which were recounted, the clerk of the board of county canvassers shall refund the money deposited to the petitioner.

---

[2] This issue also entails sections of the Michigan Election Law governing recounts. Our Legislature recently revised these sections by enacting 2024 PA 74, which takes effect March 19, 2025.

[3] The revised version of this statute takes effect on March 19, 2025. 2024 PA 74.

[4] The revised version of this statute takes effect March 19, 2025. 2024 PA 74.

(8) If a refund is not made as required under subsection (7), the sum deposited must be paid by the clerk of the board of county canvassers to the treasurer of the county.

The amended version of MCL 168.867, which takes effect March 19, 2025, does not materially change or add to the provisions pertaining to the deposit-per-precinct requirements. In sum, a voter petitioning for a recount of a ballot proposal vote in which the outcome prevailed by more than 50 votes must pay a deposit of $125 for each precinct in the recount petition. The deposit will be refunded if the recount establishes the petitioner's allegations of fraud or error. MCL 168.654 defines the term "election precinct" as follows:

> The words "election precinct" as used in this act shall mean a political subdivision, the area of which is embraced in its entirety within the confines of a city, ward, township or village, and for which not more than 1 polling place is provided for all qualified and registered electors residing therein. When not divided according to law into 2 or more election precincts, each organized city, ward, township and village shall be an election precinct.

This case presents the novel issue of whether early voting sites are "precincts" for purposes of charging recount deposits under MCL 168.867.

Const 1963, Art 2, § 4(1)(m) was amended by Constitutional Measure 22-2 to guarantee early voting rights as follows:

> (m) The right, once registered, to vote in each statewide and federal election in person at an early voting site prior to election day. Voters at early voting sites shall have the same rights and be subject to the same requirements as voters at polling places on election day. An early voting site is a polling place and shall be subject to the same requirements as an election day polling place, except that an early voting site may serve voters from more than six (6) precincts and may serve voters from more than one (1) municipality within a county. An early voting site shall also be subject to the same requirements as an election day precinct, except that any statutory limit on the number of voters assigned to a precinct shall not apply to an early voting site. Each early voting site shall be open for at least nine (9) consecutive days beginning on the second Saturday before the election and ending on the Sunday before the election, for at least eight (8) hours each day, and may be open for additional days and hours beyond what is required herein at the discretion of the election official authorized to issue ballots in the jurisdiction conducting the election. Jurisdictions conducting elections within a county may enter into agreements to share early voting sites. A jurisdiction conducting an election may enter into an agreement with the clerk of the county in which it is located authorizing the county clerk to conduct early voting for the jurisdiction. Jurisdictions conducting non-statewide elections may offer early voting for such elections in accordance with the provisions of this part (m) of subsection (4)(1). No early voting results shall be generated or reported until after eight (8) pm on election day.

Const 1963, Art 2, § 4(1) further provides:

> All rights set forth in this subsection shall be self-executing. This subsection shall be liberally construed in favor of voters' rights in order to effectuate its purposes. Nothing contained in this subsection shall prevent the legislature from expanding voters' rights beyond what is provided herein. This subsection and any portion hereof shall be severable. If any portion of this subsection is held invalid or unenforceable as to any person or circumstance, that invalidity or unenforceability shall not affect the validity, enforceability, or application of any other portion of this subsection.

MCL 168.720a, which did not become effective until after plaintiff petitioned for a recount, defines "early voting" as "casting a ballot in person before election day in the same manner as a ballot is cast on election day, including depositing the ballot into a tabulator." MCL 168.720a(b). "Early voting site" is defined as follows:

> "Early voting site" means a location where early voting occurs and that meets both of the following requirements:
>
> (*i*) Is open for at least 9 consecutive days of early voting beginning on the second Saturday before a statewide or federal election and ending on the Sunday before a statewide or federal election.
>
> (*ii*) Is open for at least 8 hours each day during the required 9 consecutive days of early voting. [MCL 168.720a(e).]

The trial court relied on the definitions in MCL 168.720a, although they were not in effect on the relevant dates. 2023 PA 81 also amends MCL 168.662 to include a definition of "early voting sites." The term is defined to mean "that term as described in section 4(1)(m) of article II of the state constitution of 1963." MCL 168.662(12)(c).

None of these provisions clearly or directly resolve the question of whether an early voting site counts as a separate precinct for purposes of determining the petitioner's recounting deposit. It is therefore necessary to infer the answer from the Michigan Constitution's early voting provision, Const 1963, Art 2, § 4(m). The pertinent sentences of this amendment state:

> An early voting site is a polling place and *shall be subject to the same requirements as an election day polling place*, except that an early voting site *may serve voters from more than six (6) precincts* and may serve voters from more than one (1) municipality within a county. An early voting site shall also *be subject to the same requirements as an election day precinct, except that any statutory limit on the number of voters assigned to a precinct shall not apply* to an early voting site. [Emphasis added.]

The trial court concluded that an early voting site cannot be a precinct because an early voting site can serve more than six precincts: "[i]f an 'early voting site' may serve voters from multiple precincts, then it cannot itself be considered a 'separate precinct.' "

-6-

We agree with the trial court that this interpretation "is a common sense application of the plain language of the constitutional provision." The Subsection (m) does not refer to or describe an early voting site as a "precinct," but as "a polling place" that may combine more than six precincts. That early voting sites are "subject to the same requirements as an election day precinct" does not speak to their treatment during a recount, but only to how the sites are operating for voters during an election. The legal authorities in effect at the time of the 2023 election and plaintiff's petition for a recount regard early voting sites as polling places that are not precincts, with no exception provided for calculation of recount fees. The trial court therefore did not abuse its discretion in denying OCBC's motion for reconsideration with respect to plaintiff's refund; nor did it err in its original summary disposition order rejecting OCBC's argument regarding early voting sites.[5]

## III. DOCKET NO. 370791: VOTER FRAUD INVESTIGATION AND RECOUNT

Plaintiff challenges the trial court's grants of summary disposition in defendants' favor. A trial court's decision on a motion for summary disposition is reviewed de novo. *Eplee v City of Lansing*, 327 Mich App 635, 644; 935 NW2d 104 (2019). Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2018). "When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id.* at 160. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. A party may not use documentary evidence such as affidavits or depositions to support a motion for summary disposition under MCR 2.116(C)(8). *Bodnar v St John Providence, Inc*, 327 Mich App 203, 212; 933 NW2d 363 (2019).

Summary disposition may be granted under MCR 2.116(C)(10) "when the affidavits or other documentary evidence, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to

---

[5] 2024 PA 74, which takes effect on March 19, 2025, after plaintiff petitioned for a recount of Proposal B votes, resolves this issue consistent with our analysis. MCL 168.861(5) states:

> As used in this chapter, "precinct" means any of the following:
>
> (a) An election day precinct.
>
> (b) A precinct *at an* absent voter counting board.
>
> (c) A precinct *at an* early voting site. [MCL 168.861(5) (emphasis added).]

This statute does not equate early voting sites with precincts. The phrase, "[a] precinct *at an* early voting site" indicates that precincts maintain their character when they are combined with other precincts at an early voting site, which therefore is not a separate or additional precinct, but a common location for its constituent precincts' early voting.

judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "If the moving party properly supports his or her motion, the burden shifts to the nonmoving party to establish that a genuine issue of material fact exists." *Redmond v Heller*, 332 Mich App 415, 438; 957 NW2d 357 (2020). "Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Lowrey*, 500 Mich at 7, quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996). "If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted." *Lowrey*, 500 Mich at 7, quoting *Quinto*, 451 Mich at 363.

"The applicability of a legal doctrine, such as mootness, is a question of law which this Court reviews de novo." *Michigan Republican Party v Donahue*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364048); slip op at 3 (quotation marks and citation omitted). "This Court applies the abuse of discretion standard to review a trial court's decision regarding a writ of mandamus." *Citizens for Higgins Lake Legal Levels v Roscommon Co Bd of Comm'rs*, 341 Mich App 161, 178; 988 NW2d 841 (2022) (quotation marks and citation omitted). "[A]n abuse of discretion occurs only when the trial court's decision is outside the range of reasonable and principled outcomes." *Saffian v Simmons*, 477 Mich 8, 12; 727 NW2d 132 (2007).

Chapter XXXIII of the Michigan Election Law, MCL 168.862 *et seq*., provides the procedures for petitions to recount election results and to investigate reports of fraud or error. MCL 168.869 provides that the board must "make an investigation of the facts set forth in the petition." MCL 168.870 permits the board to issue subpoenas to persons in charge of ballot boxes. MCL 168.872 provides that when it "shall appear to the board of canvassers having jurisdiction over said recount that there is probably cause to believe that there has been fraud, wrongdoing or a violation of the law in respect to said election . . . the said canvassers shall make full and complete investigation of the same." Plaintiff contends that OCBC failed to investigate his allegations of fraud and error in the handling of absentee and in-person ballots.

A threshold issue is whether plaintiff's claim is moot. The trial court concluded that it was moot because the recount has been completed and the court could not grant relief. We disagree. We will, as we have in the past, address this issue as it is a question of public significance and a factual scenario likely to reoccur. *See Barrow v Wayne Co Bd of Canvassers*, 341 Mich App 473, 483-484; 991 NW2d 610 (2022).

As an initial matter, plaintiff sought an order of superintending control, which is the appropriate cause of action for challenging the general practices of an inferior court. *Compagner v Burch*, ___ Mich App ___, ___ n 37; ___ NW3d ___ (2023) (Docket No. 359699); slip op at 20. However, plaintiff has not established that OCBC is an inferior court or tribunal such that superintending control does not apply here. This Court, however, is not "bound by a party's choice of labels," but may "determine the gravamen of a party's claim by reviewing the entire claim . . . ." *Attorney General v Merck Sharp & Dohme Corp*, 292 Mich App 1, 9-10; 807 NW2d 343 (2011). "A writ of mandamus is the appropriate remedy for a party seeking to compel action by election officials." *Davis v Secretary of State*, 346 Mich App 445, 461; 12 NW3d 653 (2023). It is therefore appropriate to analyze plaintiff's claim as though it had been correctly labeled for mandamus.

"A writ of mandamus will issue only when '(1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial and involves no exercise of discretion or judgment, and (4) no other remedy exists, legal or equitable, that might achieve the same result.' " *Zelasko v Charter Twp of Bloomfield*, 347 Mich App 141, 160 n 5; 14 NW3d 441 (2023) (quotation marks and citation omitted). "Mandamus is a legal remedy, but mandamus proceedings are essentially equitable in principle." *Davis*, 346 Mich App at 461. "It is an extraordinary remedy, and the plaintiff bears the burden of demonstrating entitlement to the requested relief." *Id*.

In *Barrow*, 341 Mich App 473, this Court applied the mandamus elements and, with respect to the first one, stated that the "plaintiff's clear legal right in the execution of a duty must be more than a right possessed by citizens generally." *Id*. at 485. This Court concluded that the defendant "had a clear legal duty to investigate all facts alleged" in the plaintiff's petition under MCL 168.869. *Id*. at 485-486. Regarding the plaintiff's right to have the investigation, this Court noted "that the parties do not dispute that plaintiff filed a valid petition," and concluded that "it follows that plaintiff had a corresponding legal right to have defendant investigate the facts he alleged in his petition." *Id*. at 486. However, this Court concluded that mandamus was inappropriate "because, in the context of MCL 168.869, the act of investigating is an act that is discretionary in nature—not ministerial." *Id*. "A ministerial act is one in which the law prescribes and defines the performance with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Id*. at 486. MCL 168.869 "does not define 'investigation' with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Barrow*, 341 Mich App at 486. The statute "is silent as to what this investigation is supposed to entail," without demanding "a specific method of investigation, nor does it specify how thorough defendant's investigation must be." *Id*.

With respect to Halas, plaintiff did not allege or argue that the city clerk has a clear legal duty with respect to his petition for a recount. Plaintiff still does not identify any such duty for Halas in his brief on appeal. Halas is not mentioned at all in the bulk of appellant's brief and is not mentioned in the conclusion or request for relief. Accordingly, the trial court correctly granted Halas's motion for summary disposition under MCR 2.116(C)(8).

OCBC, on the other hand, has a clear legal duty to conduct recounts and investigate claims of election fraud. *Barrow*, 341 Mich App at 485-486; MCL 168.869. However, it is not clear that plaintiff has a clear legal right to performance of a recount and investigation that is "more than a right possessed by citizens generally." *Barrow*, 341 Mich App at 484-485. This Court in *Barrow* concluded that the plaintiff-candidate had such a right under MCL 168.862. In the instant case, plaintiff sought a recount of a ballot question in his capacity as an elector under MCL 168.863. The Court in *Barrow* did not expressly state that the plaintiff's clear legal right to an investigation stemmed specifically from his status as a candidate seeking a recount. However, a voter's right to a recount of a ballot proposal is arguably distinguishable from a candidate's right to a recount with respect to whether the plaintiff in the former circumstance is merely exercising "a right possessed by citizens generally." *Id*. at 485. In any event, plaintiff clearly cannot prevail on the third element, that the action sought is ministerial in nature. As stated in *Barrow*, the statute does not require a specific type of investigation. The manner of the recount and investigation are discretionary in nature. *Id*. at 486. Plaintiff therefore is not entitled to a writ of mandamus. OCBC is entitled to summary disposition because plaintiff failed to plead a valid claim.

Furthermore, even if plaintiff's pleadings were sufficient, plaintiff failed to establish a genuine issue of material fact that OCBC disregarded evidence indicating fraud. "A court may only consider substantively admissible evidence actually proffered by the parties when ruling on the motion." *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 507; 991 NW2d 230 (2022); MCR 2.116(G)(6). Affidavits in support of a party's response opposing summary disposition under MCR 2.116(C)(10) "must be made on the basis of personal knowledge and must set forth with particularity such facts as would be admissible as evidence to establish or deny the grounds stated in the motion." *SSC Assoc Ltd Partnership v Gen Retirement Sys of City of Detroit*, 192 Mich App 360, 364; 480 NW2d 275 (1991).

Plaintiff submitted affidavits from voters who stated that "based on information and belief," their ballots were not shown as recorded. These affiants did not indicate that they personally inquired into the status of their ballots. Plaintiff also attached affidavits from "canvassers" who repeated information they heard from persons who received absentee ballots. The repeated statements are hearsay under MRE 801(c) because they were made by a person other than the declarant and were offered to prove the truth of the matter asserted. Hearsay is generally not admissible. MRE 802. Plaintiff also offered evidence that has no apparent relevance to his petition. Evidence regarding problems with voting equipment in Georgia in 2021, and regarding an investigation in Wayne County, does not have any tendency to make facts about the Proposal B election more or less probable than they are without the evidence. MRE 401. Accordingly, it is not admissible. MRE 402. Plaintiff appears to be insinuating that election fraud involving mishandling of ballots and faulty counting equipment is so pervasive and widespread that the outcome of Proposal B is inherently suspicious. This argument is neither clearly presented nor logical.

In sum, we hold that in Docket No. 370776, the trial court properly granted a refund to plaintiff. In Docket No. 370791, we rule that the trial court correctly dismissed plaintiff's claims for mandamus and superintending control.

Affirmed.

/s/ Adrienne N. Young
/s/ Kristina Robinson Garrett
/s/ Randy J. Wallace

-10-