# STATE OF MICHIGAN

# COURT OF APPEALS

ELAINE STEELE and ROSA & RAYMOND
PARKS INSTITUTE FOR SELF
DEVELOPMENT,

        Plaintiffs-Appellants,

v

SYLVESTER McCAULEY, DEBORAH ROSS,
ASHEBER MACHARIA, ROBERT D.
McCAULEY, YVONNE TRUSSEL, ROSALIND
BRIDGEFORTH, SUSAN McCAULEY,
SHIRLEY McCAULEY, SHEILA McCAULEY
KEYS, RICHARD McCAULEY, CHERYL
McCAULEY, RHEA McCAULEY, and
WILLIAM McCAULEY,

        Defendants-Appellees.

UNPUBLISHED
March 20, 2018

No. 332305
Wayne Probate Court
LC No. 13-791382-CZ

Wayne Circuit Court
LC No. 13-002255-CK

---

ELAINE STEELE and ROSA & RAYMOND
PARKS INSTITUTE FOR SELF
DEVELOPMENT,

        Plaintiffs-Appellants,
and

STEVEN G. COHEN,

        Appellant,

v

SYLVESTER McCAULEY, DEBORAH ROSS,
ASHEBER MACHARIA, ROBERT D.
McCAULEY, YVONNE TRUSSEL, ROSALIND
BRIDGEFORTH, SUSAN McCAULEY,
SHIRLEY McCAULEY, SHEILA McCAULEY
KEYS, RICHARD McCAULEY, CHERYL

No. 334192
Wayne Probate Court
LC No. 13-791382-CZ

Wayne Circuit Court
LC No. 13-002255-CK

McCAULEY, RHEA McCAULEY, and
WILLIAM McCAULEY,

        Defendants-Appellees.

---

*In re* ESTATE OF ROSA LOUISE PARKS.

---

ELAINE STEELE and ROSA & RAYMOND
PARKS INSTITUTE FOR SELF
DEVELOPMENT,

        Petitioners-Appellants,

v

SYLVESTER McCAULEY, DEBORAH ROSS,
ASHEBER MACHARIA, ROBERT D.
McCAULEY, YVONNE TRUSSEL, ROSALIND
BRIDGEFORTH, SUSAN McCAULEY,
SHIRLEY McCAULEY, SHEILA McCAULEY
KEYS, RICHARD McCAULEY, CHERYL
McCAULEY, RHEA McCAULEY, and
WILLIAM McCAULEY,

        Respondents-Appellees.

No. 339192
Wayne Probate Court
LC Nos. 2005-698046-DE and
      2006-707697-TV

---

Before: K. F. KELLY, P.J., and MURPHY and RIORDAN, JJ.

PER CURIAM.

These consolidated appeals involve a dispute between plaintiffs, Elaine Steele and the Rosa & Raymond Parks Institute for Self-Development ("plaintiffs", "Steele" and "the Institute"), and defendants, the nieces and nephews of the iconic civil rights pioneer Rosa Parks ("defendants"), over a coat that Parks allegedly wore when she was arrested for refusing to give up her seat to a white woman on a city bus. Plaintiffs originally filed suit in Wayne Circuit Court for breach of contract and fraud based on defendants' failure to turn over the coat as agreed to in the underlying probate court dispute. The circuit court concluded that it lacked subject-matter jurisdiction over the controversy and transferred the matter to the probate court. Following a number of hearings, the probate court concluded that plaintiffs' claims were barred by res judicata and imposed sanctions against plaintiffs for bringing a frivolous lawsuit.

Docket Nos. 332305 and 334192 arise from these circuit court and probate orders. There are two docket numbers because plaintiffs' attorney filed a brief in his individual capacity, not knowing whether the sanctions imposed were to be paid by plaintiffs for the attorney.

-2-

Docket No. 339192 relates to proceedings that occurred after the probate court dismissed plaintiffs' claims on the basis of res judicata. In that same order, the probate court invited plaintiffs to file a petition regarding the value of the coat to determine the amount, if any, sanctions were due plaintiffs for defendants' failure to abide by the previous settlement agreement. The probate court ultimately concluded that it could not properly determine the coat's separate value and declined to sanction defendants.

Finding no errors warranting reversal, we affirm the circuit court and probate court orders.

## I. BASIC FACTS AND PROCEDURAL HISTORY

### A. CIRCUIT COURT PROCEEDINGS

In 2013, plaintiffs filed suit in the circuit court alleging breach of contract and fraud. Although plaintiffs argued that their claims arose out of a March 2007 settlement agreement in the probate court, they claimed that the action was not within the jurisdiction of the probate court because the claims did not relate to the settlement of the estate or property of the estate.

Plaintiffs alleged that, in exchange for agreeing not to challenge Park's will, defendants entered into the 2007 settlement agreement in which plaintiffs agreed to pay defendants 20% of the net proceeds generated from the licensing of intellectual property rights that were owned by the Institute. In paragraph 5(a) of the settlement agreement, the Institute agreed to turn over control of its artifact collection to a Marketing Committee that would arrange for the sale or license of the artifacts. Defendants agreed to turn over the coat worn by Parks on the date of her arrest. The paragraph provided:

> a. Marketable Property. "Marketable Property" shall mean all tangible personal property identified on Exhibit A to this agreement, which will be attached as a supplement to this Agreement within 21 days, following a physical inspection by Mrs. Steele and a representative of the Institute of the property held by the personal representatives. The Heirs [defendants] shall have a corresponding opportunity to conduct a physical inspection of said property within 21 days. *The Heirs claim to possess the coat worn by Rosa Parks on the date of her arrest on the bus (the "Coat"), and the Heirs acknowledge and agree that the Coat shall be included in Marketable Property.* The parties agree to work cooperatively toward the purchase of an insurance policy to cover the property in the possession of the personal representatives against casualty or other loss, the premium of which shall be paid by the Estate. [Emphasis added.]

However, in an affidavit dated August 27, 2008, Susan McCauley, the niece to whom the coat was given when McCauley was a student at Michigan State University, averred that she did not have the coat. She believed that the coat was donated to the Martin Luther King Center, but she had no evidence of such a donation.

Plaintiffs alleged that "[i]t is apparent that the representation was made to induce the Institute to place control of its artifacts in the Marketing Committee and pay Defendants a portion of proceeds from the sale or license of the artifacts." Count I of the complaint alleged

-3-

that defendants entered into a joint venture to breach the settlement agreement by failing to deliver the coat. Count II of the complaint alleged that defendants entered into a joint venture to breach the settlement agreement by violating their "obligation of good faith in the performance of the settlement agreement." Count III of plaintiffs' complaint alleged that defendants entered into a joint venture to fraudulently induce the settlement agreement by indicating that they possessed the coat.

In lieu of filing an answer to plaintiffs' complaint, defendants filed a motion for summary disposition or transfer of the matter to the probate court. Defendants argued that the probate court had exclusive jurisdiction of plaintiffs' claims because the claims clearly arose from and were related to the administration of Parks's estate. Defendants' motion referenced the contentious history between the probate court and plaintiffs' attorney and suggested that plaintiffs brought this action in the circuit court to avoid litigating the matter in the probate court. Defendants also argued that the probate court addressed the coat matter on two prior occasions and that plaintiffs were "attempting to obtain a 'second bite of the apple.'"

The two instances when the probate court addressed the missing coat was an August 10, 2009 order denying plaintiffs' motion for arbitration, and a January 13, 2010 order granting enforcement of court orders. The 2009 opinion provided:

> As to the Heirs' failure to locate and deliver the Coat worn by Mrs. Parks, this Court finds a breach of the Settlement Agreement. The proper remedy, however, for the Heirs' apparent breach of ¶ 5 of the Settlement Agreement is not arbitration. The Court finds no fraud or intentional wrongdoing on the part of the Heirs on the basis of the Affidavit of Susan D. McCauley, a niece of the Decedent. The Heirs' failure to comply, however, does warrant a sanction to be determined by the Court. Attorney Cohen is entitled to his reasonable costs and attorney fees associated specifically with the Institute and Steele's efforts to retrieve this coat from the Heirs as promised. In this regard, Attorney Cohen may submit such a request for approval of such fees within fourteen (14) days of the date of this Opinion.

The January 13, 2010 order provided:

> **IT IS ALSO HEREBY ORDERED THAT** the Rosa & Raymond Parks Institute shall file an Accounting of all monies received by CMG according to the information provided by CMG within thirty (30) days of the date of this Opinion. Upon its filing, a hearing will be set by the Court to reconcile the Account and determine the amount of any setoffs, including but not limited to any setoffs owed to Steele and the Institute for the Heirs' failure to turn over Mrs. Park's Coat according to the Settlement Agreement.

Plaintiffs responded that although the claims had a connection to the estate through the settlement agreement, the claims did not involve the internal affairs or administration of the estate. The circuit court disagreed, granted defendants' motion for summary disposition, and transferred the matter to Wayne County Probate Court.

-4-

## B. PROBATE COURT PROCEEDINGS

Upon receiving the case from the circuit court, the probate court ordered plaintiffs to file a new complaint. Plaintiffs' amended complaint mirrored the circuit court complaint except for the captioning and except for the fact that plaintiffs protested jurisdiction.

Defendants filed a motion for summary disposition on February 26, 2014. Defendants argued that plaintiffs' action was barred by res judicata and collateral estoppel because the probate court had already addressed the issue of the missing coat on two prior occasions. Defendants requested sanctions under MCR 2.114(E), claiming that plaintiffs' action was frivolous.

Plaintiffs responded that they were not estopped from bringing their complaint because no prior action for breach of contract was ever brought. Plaintiffs claimed that they were entitled to summary disposition under MCR 2.116(I)(2) because there was no genuine issue of material fact that defendants breached the settlement agreement.

The probate court determined that plaintiffs' claims were barred by res judicata and collateral estoppel but invited plaintiffs to file a petition regarding the valuation of the coat and a setoff in case number 2006-707697-TV and 2005-698046-DE. The probate court further concluded that plaintiffs' complaint was frivolous. Defendants were awarded a total of $19,456.08 – $14,083.08 in fees and costs for Attorney Lawrence Pepper and $5,373 in fees for Howard Gurwin. Further facts regarding the probate court's penalty award will be discussed in Section IV of this opinion.

## C. 2005-698046-DE AND 2006-707697-TV

Plaintiffs[1] filed an action for the valuation of the coat on April 18, 2016. The facts surrounding this opinion will be discussed in Section V of this opinion at length. The probate court ultimately concluded that plaintiffs were not entitled to a jury trial on the amount of sanctions and that, even with plaintiffs' 84-page appraisal, it was impossible to determine the coat's value on the record. The probate court, therefore, declined to sanction defendants for their failure to turn over the coat as agreed to in the settlement agreement.

## II. SUBJECT MATTER JURISDICTION

Plaintiffs argue that the circuit court erred when it determined that it did not have subject matter jurisdiction over plaintiffs' claims. We disagree.

This Court reviews de novo a trial court's decision to grant or deny summary disposition. Jurisdictional questions under MCR 2.116(C)(4) are questions of law that are also reviewed de novo. Similarly, issues of statutory

---

[1] We continue to refer to the parties as "plaintiffs" and "defendants" in lieu of "petitioners" and "respondents" for the sake of continuity.

interpretation are questions of law that are reviewed de novo on appeal. A trial court is duty-bound to recognize the limits of its subject-matter jurisdiction and must dismiss an action when subject-matter jurisdiction is not present.

MCR 2.116(C)(4) permits a trial court to dismiss a complaint when "[t]he court lacks jurisdiction of the subject matter." . . . So, when reviewing a motion for summary disposition brought under MCR 2.116(C)(4) that asserts the court lacks subject-matter jurisdiction, the court must determine whether the pleadings demonstrate that the defendant is entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact. [*Meisner Law Group PC v Weston Downs Condo Assn*, ___ Mich App ___; ___ NW2d ___ (October 24, 2017), slip op, p 5 (some citations and quotation marks omitted.]

Probate courts are vested with exclusive jurisdiction in a number of situations. MCL 700.1302(a) provides:

The court has exclusive legal and equitable jurisdiction of all of the following:

(a) A matter that relates to the settlement of a deceased individual's estate, whether testate or intestate, who was at the time of death domiciled in the county or was at the time of death domiciled out of state leaving an estate within the county to be administered, including, but not limited to, all of the following proceedings:

(*i*) The internal affairs of the estate.

(*ii*) Estate administration, settlement, and distribution.

(*iii*) Declaration of rights that involve an estate, devisee, heir, or fiduciary.

(*iv*) Construction of a will.

(*v*) Determination of heirs.

(*vi*) Determination of death of an accident or disaster victim under section 1208.

On appeal, plaintiffs argue that their claims for breach of contract and fraud may have been "connected to" the probate case, but that the claims had nothing to do with the actual administration of the estate. Plaintiffs' argument is meritless, at best. "[A] court is not bound by a party's choice of labels." *Attorney Gen v Merck Sharp & Dohme Corp*, 292 Mich App 1, 9–10; 807 NW2d 343 (2011). Instead, a court must "determine the gravamen of a party's claim by reviewing the entire claim, and a party cannot avoid dismissal of a cause of action by artful pleading." *Id.* This Court need only look at plaintiffs' own complaint to discern that their claims involve the internal affairs of the state and the estate's administration, settlement and distribution.

For example, plaintiffs' circuit court complaint alleged that "[s]ince entering into the settlement agreement, Defendants have, through their support of forfeiture proceedings undertaken by court-appointed estate fiduciaries, repeatedly undermined the interests of Plaintiffs under the settlement agreement in breach of their obligation to exercise good faith in the performance of the settlement agreement."

Count I of plaintiffs' complaint alleged that defendants entered into a joint venture to breach the settlement agreement by failing to deliver the coat. As to that count, plaintiffs made the following request:

> Therefore, Plaintiffs request an order disbanding the Marketing Committee established under the settlement agreement and declaring the Institute the owner of all right, title and interest in the civil rights artifact collection referenced in the settlement agreement, free from any and all claims of the Defendants. In the alternative, Plaintiffs seek an award of money damages.

Count II of plaintiffs' complaint alleged that defendants entered into a joint venture to breach the settlement agreement by violating their "obligation of good faith in the performance of the settlement agreement." As to Count II, plaintiffs requested the following relief:

> Therefore, Plaintiffs request an order stating that all further performance by the Plaintiffs under the settlement agreement is excused due to the material breach and/or failure of consideration caused by Defendants and providing, more specifically, that Plaintiffs are excused from the obligation to pay 20% of net intellectual property royalties to Defendants and that Plaintiffs are excused from the obligation to pay Defendants 20% of net proceeds from the sale or license of the Institute's civil rights artifact collection. In the alternative, Plaintiffs seek an award of money damages. [Circuit Court Complaint, ¶ 43.]

Finally, Count III of plaintiffs' complaint alleged that defendants entered into a joint venture to fraudulently induce the settlement agreement by indicating that they possessed the coat. Plaintiffs alleged that defendants' misrepresentation comprised a fraud that resulted in the rescission of ¶ 5(a) of the settlement agreement. As to Count III, plaintiffs requested the following relief:

> Therefore, Plaintiffs request an order disbanding the Marketing Committee established under the settlement agreement and declaring the Institute the owner of all right, title and interest in the civil rights artifact collection referenced in the settlement agreement, free from any and all claims of the Defendants. In the alternative, Plaintiffs seek an award of money damages.

Clearly, plaintiffs' claims and the relief they sought would have impacted the administration of the estate.[2] The case at bar involves the settlement agreement that settled formal probate court challenges to Parks's will, the trust and assignment of publicity. The settlement was entered into as part of the administration of the estate and trust. Plaintiffs' claims, which sought to impact the settlement agreement and thereby impact the estate itself, were within the exclusive jurisdiction of the probate court.

## III. RES JUDICATA AND COLLATERAL ESTOPPEL

Plaintiffs argue that the probate court erred in dismissing plaintiffs' complaint on the basis of res judicata and collateral estoppel. We disagree.

Summary disposition is appropriate under MCR 2.116(C)(7) if a claim is barred by a prior judgment. *RDM Holdings, LTD v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008).

> Under MCR 2.116(C)(7) (claim barred by prior judgment, i.e., res judicata), this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [*RDM Holdings*, 281 Mich App at 687 (citations omitted).]

"The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *Begin v Mich Bell Tel Co*, 284 Mich App 581, 598; 773 NW2d 271 (2009), overruled on other grounds 494 Mich 10; 831 NW2d 849 (2013).

> Consequently, res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical. A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies.
>
> Michigan courts have broadly applied the doctrine of res judicata. They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have

---

[2] Defendant cites an unpublished case in support of its position. Because it is unpublished, the case is unavailing lacks precedential value. MCR 7.215(C)(1). Although defendant cites the case as persuasive authority, it is not.

raised but did not. [*Dart v Dart,* 460 Mich 573, 586; 597 NW2d 82 (1999) (internal citations omitted).]

Similarly,

> Collateral estoppel bars relitigation of an issue in a new action arising between the same parties or their privies when the earlier proceeding resulted in a valid final judgment and the issue in question was actually and necessarily determined in that prior proceeding. The doctrine bars relitigation of issues when the parties had a full and fair opportunity to litigate those issues in an earlier action. A decision is final when all appeals have been exhausted or when the time available for an appeal has passed. [*Leahy v Orion Twp,* 269 Mich App 527, 530; 711 NW2d 438 (2006) (internal citations omitted).]

The coat issue was raised and addressed by the probate court on two separate occasions. First, in its August 10, 2009 opinion denying plaintiffs' motion for arbitration and then in its January 13, 2010 opinion granting enforcement of its previous orders. Plaintiffs are precluded from bringing another action regarding the same issue. Once again, plaintiffs' own words are the best evidence of their motives. On this particular issue, plaintiffs' arguments are frivolous. For example, in their appellate brief as it relates to the probate court's August 10, 2009 order denying plaintiffs' motion for arbitration, plaintiffs write:

> The procedure for settling disputes arising under the [settlement] agreement is somewhat murky. The settlement agreement requires the parties to tender all disputes (including matters within the probate court's jurisdiction and those outside its jurisdiction) to the probate court for informal resolution prior to invoking arbitration. Plaintiffs believed at the time that a motion in the probate court to compel arbitration was a proper vehicle for tendering the dispute to the probate court and invoking arbitration. In retrospect, Plaintiffs believe they were in error. The probate court clearly did not have jurisdiction to adjudicate controversies unconnected with Estate administration, such as the coat controversy. Accordingly, the probate court did not have jurisdiction to order arbitration of the coat controversy. The Plaintiffs' motion to compel arbitration was proper except to the extent it sought to compel arbitration of the coat controversy.

> \* \* \*

> As discussed above, the probate court did not have jurisdiction to compel arbitration of the coat controversy because it does not involve Estate property. The probate court's denial of the motion was, therefore, harmless.

> \* \* \*

> The probate court's findings that Defendants committed a breach of contract and were liable for costs and attorney fees, while not adverse to Plaintiffs' interests, are nonetheless troubling on several levels. As previously

-9-

discussed, the probate court did not have jurisdiction to enter these extra rulings because the coat controversy did not involve Estate property.

In this argument, plaintiffs acknowledge that the probate court specifically found that defendants breached the settlement agreement. Plaintiffs explain that they did not file an appeal because it was not a final order and because the order did not contain any "relief adverse to Plaintiffs' interests." Plaintiffs further explained that they did not do as the court requested and file a request for attorney fees "because they realized that the probate [court] did not have jurisdiction in the matter."

Plaintiffs brought the coat issue to the probate court's attention, resulting in the 2009 and 2010 orders. To the extent plaintiffs attempt to collaterally attack the probate court's ability to dispose of the issue, "[a]n appellant cannot contribute to error by plan or design and then argue error on appeal." *Munson Med Ctr v Auto Club Ins Ass'n*, 218 Mich App 375, 388; 554 NW2d 49 (1996).

## IV. SANCTIONS

Plaintiffs argue that their complaint was not frivolous and that the probate court erred in assessing sanctions against them. They further argue that the probate court erred in determining the amount of the sanction. We disagree.

"A trial court's finding that an action is frivolous is reviewed for clear error." *Kitchen v Kitchen*, 465 Mich 654, 662; 641 NW2d 245 (2002). A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id*. at 661-662. A trial court's determination of the amount of the sanctions imposed is reviewed for an abuse of discretion. *Vittiglio v Vittiglio*, 297 Mich App 391, 408; 824 NW2d 591 (2012), lv den 493 Mich 936 (2013). "A trial court abuses its discretion when its decision results in an outcome falling outside the range of principled outcomes." *Dep't of Transp v American Motorists Ins Co*, 305 Mich App 250, 254; 852 NW2d 645 (2014).

MCR 2.114(E) and (F) provide:

(E) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

(F) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

MCL 600.2591 further provides:

(1) Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to

-10-

the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

(2) The amount of costs and fees awarded under this section shall include all reasonable costs actually incurred by the prevailing party and any costs allowed by law or by court rule, including court costs and reasonable attorney fees.

(3) As used in this section:

(a) "Frivolous" means that at least 1 of the following conditions is met:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

"Sanctions for bringing a frivolous action are warranted where the plaintiff, on the basis of a ruling in another case, has reason to believe that an action against the defendant lacks merit." *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 423; 668 NW2d 199 (2003).

In determining reasonable attorney fees, a court must consider: (1) the professional standing and experience of the lawyer; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. *John J Fannon Co v Fannon Products, LLC*, 269 Mich App 162, 171-172; 712 NW2d 731 (2005).

The probate court did not err in finding that plaintiffs' claim was frivolous. Our analyses on the two preceding issues demonstrate just how void of merit plaintiffs' claims were. As to the amount of sanctions, plaintiffs do not dispute the hourly rate and instead insist that the number of hours were unreasonable. Specifically, plaintiffs argue that many of the fees were incurred in 2015 and 2016 while the parties awaited the probate court's decision on defendants' motion for summary disposition. However, the probate court explained:

> [T]his court notes that any delay in rendering a decision on the motion for summary disposition is attributable to the plaintiffs and plaintiffs' counsel. The long-contested history of the related Parks trust and estate proceedings is well outlined in the March 2016 opinion that is currently on appeal.

> * * *

> Before this court could rule upon the defendants' motion for summary disposition or plaintiffs' request for partial summary disposition, the proceeding was stayed pending plaintiffs' application for leave to appeal to the Michigan Supreme Court in the estate matter. After the application was denied, plaintiffs

-11-

filed a motion to compel discovery and for judicial disqualification and other relief on August 7, 2015, requesting that Judge Burton disqualify himself from the case.

After a hearing on the motion, the court, on October 30, 2015, denied the motion to disqualify. The motion to disqualify was then referred to the State Court Administrator's Office ("SCAO") for a review of Judge Burton's denial. The matter was assigned to the Chief Judge of the Oakland County Probate Court, the Honorable Elizabeth Pezzetti. On December 21, 2015, Judge Pezzetti denied plaintiffs' motion and transferred the proceedings back to the Wayne County Probate Court. A hearing on the motion for summary disposition occurred on February 23, 2016.

The delay in deciding the substantive motion for summary disposition was brought about primarily by plaintiff. Therefore, the probate court did not abuse its discretion in determining the number of hours expended on this case.

## V. VALUATION OF THE COAT

Plaintiffs argue that the probate court erred in treating plaintiffs' petition for valuation as a sanction and in striking plaintiffs' jury demand. Plaintiffs further argue that the probate court erred in refusing to sanction defendants for failing to turn over the coat as previously agreed. We disagree.

At the time plaintiffs filed their petition for valuation, plaintiffs also filed a petition for instructions on "how to proceed" with the valuation petition. Plaintiffs requested the following:

12. The court is requested to issue instructions on whether the valuation placed on the coat will result in a damages award against the Heirs for their breach of contract/fraud and in favor of Steele and the Institute. Steele and the Institute believe that an award of damages is appropriate due to the clear breach of contract and fraud committed by the Heirs.

13. The court is also requested to issue instructions on whether there are any other issues for determination in connection with the Valuation Action, other than a valuation of the coat.

14. The court is also requested to issue instructions on whether the Valuation Action will be heard by a jury or by the court. Steele and the Institute believe that the valuation should be made by a jury because Steele and the Institute timely requested a jury trial in their Valuation Action and paid the jury fee. Moreover, Steele and the Institute believe that the Valuation Action can only be for the purpose of determining damages for the Heirs' breach of contract and fraud, and the determination of damages is an issue clearly triable to a jury.

In an opinion dated February 28, 2017, the probate court addressed plaintiffs' request for instructions, as well as defendants' motions for summary disposition and to strike plaintiffs' jury demand. The probate court found plaintiffs' allegations regarding the court's jurisdiction

-12-

"without merit."  It rejected plaintiffs' argument that their claim of appeal from the probate court's March 2016 order was subject to an automatic stay and "to the extent that Steel and the Institute challenge this court's dismissal of the 2013 action, such a challenge is improper in the present proceedings."  The probate court added:

> The court first discussed the issue of a setoff in the August 10, 2009 opinion and found that by failing to locate and deliver the coat, the heirs breached ¶ 5 of the settlement agreement. *It determined that the proper remedy for the failure to comply with the terms of the agreement was a **sanction** to be determined by the court and that award would be set off against the heirs' share of the estate. The court denied Steele and the Institute's request for damages and clarified that the setoff was a **sanction** as a result of the heirs' breach of the agreement and **not an award of damages**.* There was no discussion of account. Thus, summary disposition based on the failure to file an account is not proper. However, under MCL 700.3415, the heirs have a right to seek an accounting from the personal representative.
>
> Furthermore, genuine issues of material fact exist as to the value of the coat.  The heirs contend that Steele and the Institute are required to establish that the coat existed. The court disagrees. In 2007, as part of the settlement agreement, the heirs represented that they were in possession of the coat and agreed to deliver it for inclusion as part of the marketable property. *It has already been determined that the heirs failed to produce the coat as agreed upon. What remains to be determined is the value of the coat.* The heirs contend that the coat has no independent value while Steele and the Institute assert that it has been appraised at $1.35 million.  Because genuine issues exist as to the value of the coat, summary disposition will be denied and the parties will have an opportunity to address the issue at trial.  [Emphasis added.]

The probate court concluded that plaintiffs were *not* entitled to a jury trial on their petition:

> MCL 600.857(1) provides as follows:
>
> If a party to a proceeding in the probate court would have had a right before January 1, 1971 to demand a jury to determine a particular issue of act in the circuit court upon a de novo appeal from that proceeding to the circuit court, that party shall on and after January 1, 1971 have the right to demand a jury to determine that issue of fact in the probate court proceeding.
>
> To determine whether the right to a jury trial existed prior to 1971, this court must look to the "nature of the action."  Under the nature-of the action approach, whether an action is classified as legal or equitable determines if a right to a jury exists. This court must "consider not only the nature of the underlying claim, but also the relief that the claimant seeks." If the nature of the controversy is equitable, "then it must be heard before a court of equity."

-13-

The value that should be assigned to the coat is an equitable matter. In the August 10, 2009 opinion, the court, in the exercise of its equitable powers, determined that the heirs' failure to locate and deliver the coat warranted the imposition of **sanctions**, which would be offset against the heirs [sic] share of the estate. The petition for valuation and the relief of a setoff are not legal in nature but are based in equity. Thus, Steele and the Institute have no right to a trial by jury. The motion to strike jury demand will be granted and the request for a jury trial shall be stricken. [Emphasis added.]

The probate court rejected plaintiffs' continued attempt to assail prior orders and made the following observation:

Additionally, to the extent that Steele and the Institute seek to rehash the court's prior decisions, these matters have been adjudicated by the court and will not be reconsidered. Moreover, Steele and the Institute appealed the orders of August 10, 2009, and January 13, 2010. See *Chase v Raymond & Rosa Parks Institute for Self-Dev*, unpublished per curiam opinion of the Court of Appeals, issued April 19, 2011 (Docket Nos. 293897, 293899, 296294, 296295). The Court of Appeals affirmed this court's rulings. *Id*. However, the Michigan Supreme Court reversed the Court of Appeals judgment in lieu of granting the application for leave to appeal on the issue of breach of the settlement agreement's confidentiality provision. *Chase v Raymond & Rosa Parks Institute for Self-Dev*, 490 Mich 975; 806 NW2d 528 (2011). Although this court was instructed to implement paragraph 1 of the settlement agreement, the remaining portions of the 2009 and 2010 opinions and orders on appeal remained intact, particularly the provisions relating to the heirs' failure to provide the coat and a setoff. *Id.*; *Chase v Raymond & Rosa Parks Institute for Self-Dev*, ___ Mich ___; 807 NW2d 306 (2012) ("Despite the concerns of the probate court, that court's prior rulings resolving past disagreements between the court and Elaine Steel, the Institute, and their counsel, are undisturbed by this Court's December 29, 2011 Order, except insofar as they are inconsistent with this Court's Order, and thus pose no obstacle to implementing Paragraph 1 of the Settlement Agreement.").

The probate court summarized its rulings as follows:

Accordingly, the motion for summary disposition filed by the heirs-at-law is DENIED. The petition for valuation filed by Elaine Steele and the Raymond and Rosa Parks Institute for Self-Development shall proceed to trial. Steel and the Institute's request for stay is DENIED. The heirs' motion to strike jury demand is GRANTED and the jury demand is STRICKEN. The petition for valuation shall proceed to trial before the court. The petition for instructions filed by Steele and the Institute is GRANTED. ***A determination as to the value of the coat will not result in damages but will be a sanction due to the heirs' failure to locate and deliver the coat***. The only issue to be heard and determined by the court, not a jury, at trial is the value of the coat. [Emphasis added.]

-14-

Plaintiffs were not entitled to a jury trial. Plaintiffs' claim that they had a jury right stems from their persistent belief that the breach of contract claim is still alive. " 'Actual damages is also a term of art. Actual damages is a legal, rather than an equitable, remedy, and legal issues are traditionally tried to a jury." *Anzaldua v Band*, 457 Mich 530, 541; 578 NW2d 306 (1998). Plaintiffs' fixation on damages runs with their continuing fixation on the already-dismissed breach of contract claims. Because the coat valuation was related to *sanctions* and was a matter of equity, plaintiffs were not entitled to a jury trial. The sole issue for the probate court's consideration was the *amount of sanctions* as a result of defendants' failure to produce the coat.

The parties agreed to conduct a trial on written documents only. On March 24, 2017, plaintiffs submitted its trial brief, which consisted primarily of an appraisal report by Brian Kathenes of National Appraisal Consultants, L.L.C. The 84-page appraisal concludes that the coat had a market value of $1,350,000. The appraisal explains that there are generally three approaches to determine value – the income approach, the comparable sales approach, and the cost approach. Kathenes believed that the second of the three approaches was the most appropriate. He explained: "There are many examples of historical clothing, artifacts, and personal items related to famous people, social reformers, celebrities, and historic events. The provenance of this coat, along with its documented history and social significance make the comparable sales approach appropriate." Some of the comparable items included Jesse Owens's 1936 Olympic Gold Medal, the Nobel Prize Medal and Nobel Diploma for Francis H.C. Crick, Marilyn Monroe's "Happy Birthday, Mr. President" and "Seven Year Itch" dresses, and the U.S. Hockey Olympic Gold Medal for the 1980 "Miracle on Ice."

Defendants offered no appraisal, deciding instead to argue that the coat's very existence was only legend and that the marketable property as a whole without the coat had no impact on the value and, therefore, there could be no setoff. Specifically, defendants pointed to the fact that paragraph 5(e) of the settlement agreement required the broker to retain the marketable property intact as a single unit. The marketing agreement likewise required that the marketable property be sold intact. The marketable property was sold in 2014 as a single collection. Defendants pointed to a letter that was part of Kathenes's records from Alan Ettinger of Guernsey Auction House to defendants' attorney wherein Ettinger indicated that the coat had no separate, stand-alone value. Kathenes admitted that he valued the coat as a stand-alone item and not as part of the marketable property. Defendants maintained that Kathenes failed to use the proper valuation method, which was the difference between what the marketable property was worth with the coat from what it was worth without it. Defendants again argued that plaintiffs were improperly seeking damages instead of providing a basis for awarding sanctions.

The probate court issued an opinion on July 6, 2017. It first rejected defendants' argument that a finding that the coat did not increase the value of the marketable property was dispositive of the issue:

> [A]s explained in this court's prior opinion and orders, a determination as to the value of the coat is to be made in order to establish the amount of the sanctions to be imposed against the heirs for their breach of the settlement agreement by failing to locate and deliver the coat. This is the equitable remedy that was fashioned by the court. During the negotiations of the agreement, the heirs represented that they were in possession of the coat and agreed to deliver it for

inclusion as part of the marketable property. They are now barred from claiming mistake or inadvertence for their failure to deliver the coat in accordance with the agreement. The value of the coat in this valuation proceeding is independent of the value of the entire archive of Mrs. Parks' marketable property. Petitioners Steele and the Institute now have the opportunity to present arguments and proofs to establish the value of the coat in order to determine the amount of the sanctions to be offset against the heirs' share of the estate.

Over the next 10 pages, the probate court described plaintiffs' appraisal in great detail. The probate court ultimately concluded that it could not determine the value of the coat based on the appraisal:

> More important than [the] International Association's definition of comparative sales approach, is an explanation of the basic steps for this approach. They are as follows:
>
> 1) Collecting and analyzing data,
>
> 2) Selecting appropriate units of comparison,
>
> 3) Making reasonable adjustments based on the market, and
>
> 4) Applying the data to the subject of appraisal.
>
> In the appraisal offered by Steele and the Institute, data on purportedly comparable items were provided. The appraiser presented background information and the same prices of the items. Reasons as to why a listed item was not considered to be comparable, i.e. spurious provenances and questions of authenticity, were also stated. Otherwise, no basic steps demonstrating the critical four steps referenced in the property assessment valuation were explained in the appraisal. No values were presented showing the adjustments for the differences between the 54 listed comparables and the Parks coat. The only time it appears an adjustment was considered was in the analysis of the Montgomery bus sale for $427,919 in 2001.
>
> Without adjustments, the court is left to guess as to how the appraiser arrived at a value of $1,350,000. It is particularly difficult to follow this estimate of value in light of the range of sales included in the comparables. For example, the first nine comparables identified as "Comparable Sales Data" have a sales range of $4.6 million to $11,250. While the items listed in the "Parallel Markets – Pop Culture, Motion Picture History" section, which include 27 Oscars and 3 JFK relate[d] items, have a sale range of $861,542 to $1. Also included as parallel market data was a DNA letter that sold for $6,059,750 and a George Washington wine cooler that sold for $782,500. The balance of comparables include 2 sports artifacts and 10 movie costumes with a sales range of $5.5 million, which had been previously cited as $4.6 million, to $330,000.

-16-

Each of the aforementioned sales categories provide no assistance in understanding how the appraiser arrived at a value of the coat. Consequently, the court is unable to make a determination as to the value of the coat. As the parties have chosen to rely on filed materials – including the petition, response, reply to the response, briefs, attachments, and exhibits while waiving an evidentiary hearing – the court concludes that any determination of value based on these submissions would be pure speculation. The court declines to "guesstimate" as the evidence does not support a definitive value. Therefore, the relief sought by Petitioners Steele and the Institute must be denied.

Accordingly, Steele and the Institute's petition for valuation is DENIED. Sanctions will not be imposed against the heirs.

Importantly, plaintiffs do not take issue with any of the probate court's findings. Instead, plaintiffs argue that their evidence was unassailable. However, the mere fact that defendants failed to offer their own appraisal is not dispositive. Plaintiffs had the burden of establishing the coat's worth. "The burden of proof, which may also be generally referred to as a party's evidentiary burden, refers both to a party's burden to provide actual evidence of alleged facts and a party's burden to persuade the trier of fact as to the veracity of those facts." *People v Hartwick*, 498 Mich 192, 216; 870 NW2d 37 (2015). It is clear that the probate court went to great lengths to evaluate plaintiffs' appraisal and simply concluded that it was unable to accept the appraisal as a true estimate of the coat's worth for purposes of assessing sanctions for defendants' failure to turn over the coat.

Affirmed. Having prevailed in full, defendants may tax costs. MCR 7.219.

/s/ Kirsten Frank Kelly
/s/ William B. Murphy
/s/ Michael J. Riordan